Mary M. OLLSON, As Personal Representative of the Estate of Frederick J. Ollson, Deceased,

and

Mary M. Ollson, Individually, Plaintiff,

v.

DARLING AND COMPANY, an Illinois Corporation, Benefit Trust Life Insurance Company and Maccabees Life Insurance Company, jointly and severally, Defendants.

No. 90–72753–CK.

United States District Court, E.D. Michigan, S.D.

March 14, 1991.

---

See also 759 F.Supp. 387.

Gregory J. Stempien, Stempien & Stempien, Livonia, Mich., for plaintiff Mary M. Ollson.

Herbert G. Sparrow, Patricia D. Davies–Tomsa, Dickinson, Wright, Moon, VanDusen & Freeman, Detroit, Mich., for defendant Darling and Co.

Lisa B. Schneider, Donna M. Skelcy, Denenberg, Tuffley, Bocan, Jamieson, Black, Hopkins & Ewald, P.C., Southfield, Mich., for defendant Benefit Life Ins. Co.

Richard L. MacArthur, Paula M. Murray, MacArthur, Rhodes & Murray, P.C., Royal Oak, Mich., for defendant Maccabees Life Ins. Co.

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS BENEFIT TRUST LIFE INSURANCE COMPANY'S AND MACCABEES LIFE INSURANCE COMPANY'S MOTIONS FOR DISMISSAL

GADOLA, District Judge.

On August 17, 1990, plaintiff, Mary M. Ollson, individually, and as personal representative of the estate of Frederick J. Ollson, commenced this action in the Circuit

Court for the County of Wayne.[1] On September 14, 1990, defendants Darling & Company ("Darling"), Benefit Trust Life Insurance Company ("Benefit Trust") and Maccabees Life Insurance Company ("Maccabees") removed this action to federal court. On December 6, 1990, defendant Maccabees filed a motion for dismissal and/or summary judgment, under Fed.R. Civ.P. 12(b)(6) and 56(c). On January 15, 1991, defendant Benefit Trust also filed a motion to dismiss and/or for summary judgment. Plaintiff opposed these motions. On February 27, 1991, oral arguments were held. For the reasons set forth below, the motions of defendants Maccabees and Benefit Trust for dismissal of Counts IV and V, respectively, are granted, with prejudice.

## BACKGROUND FACTS

Frederick J. Ollson began employment with Darling in 1946. He was married on May 14, 1960, to the plaintiff, Mary M. Ollson. During the course of Frederick Ollson's employment, various fringe benefits were provided to him and other salaried employees. In 1984, defendant Darling contracted with defendant Benefit Trust for health and life insurance benefits for its employees. Frederick Ollson, as an employee of defendant Darling, was a participant in this group life insurance plan. On April 7, 1986, Frederick Ollson suffered a massive stroke and was unable to return to work. On January 27, 1989, Frederick Ollson died.

On August 1, 1988 Darling's contract with Benefit Trust terminated, and defendant Maccabees began providing the group life insurance benefits for Darling's employees.

## PREEMPTION DOCTRINE

The first issue the court must address is whether plaintiff's state law claims are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*

29 U.S.C. § 1144(a) provides:

**Supersedure: effective date.** Except as provided in subsection (b) of this section, the provisions of this title and title IV shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 4(a) [29 U.S.C. § 1003(a)] and not exempt under section 4(b) [29 U.S.C. § 1003(b)]. This section shall take effect on January 1, 1975.

29 U.S.C. § 1003(a) addresses coverage, and provides in relevant part:

Except as provided in subsection (b)[2] ... this title shall apply to any employee benefit plan if it is established or maintained—(1) by any employer engaged in commerce or in any industry or activity affecting commerce; or (2) by any employee organization or organizations representing employees engaged in commerce or in any industry or activity affecting commerce; or (3) by both.

In *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), the Supreme Court addressed the question of "whether the Employee Retirement Income Security Act of 1974 (ERISA) preempts state common law tort and contract actions asserting improper processing of a claim for benefits under an insured employee's benefit plan." *Id.* at 43, 107 S.Ct. at 1550. The Court, after examining the legislative intent of ERISA, found that state common law actions are preempted if the underlying action "relates to" an employee benefit plan. Similarly, in *Davis v. Kentucky Finance Cos. Retirement Plan*, 887 F.2d 689, 696 (1989) the Sixth Circuit stated:

Finally, the Supreme Court has held that causes of action based on state common

---

**1.** Count II of plaintiff's complaint alleged that defendant Darling breached its fiduciary duty under its ERISA plan. Count III alleged a breach of contract claim against Darling. Count IV alleged a breach of contract claim against defendant Maccabees. Count V alleged a breach of contract claim against defendant Benefit Trust. Count VI alleged a negligence claim against Darling. Count I only set forth common allegations and did not allege an independent claim.

**2.** Subsection (b) is not relevant to the present action.

law are preempted by section 514(a) of ERISA, 29 U.S.C. § 1144(a). *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41 [107 S.Ct. 1549, 95 L.Ed.2d 39] (1987). The relevant statute states that ERISA supersedes 'any and all state laws insofar as they relate to any employee benefit plan …'. 29 U.S.C. § 1144(a).

■ In the present action, Counts IV and V of plaintiff's complaint allege claims for breach of contract against defendants Maccabees and Benefit Trust, respectively. From the above case law it is clear that ERISA preempts state common law contract actions that relate to employee benefit plans.

In *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985) the Supreme Court noted the expansive sweep of the ERISA preemption clause, and the term "relate to".

"The phrase 'relate to' was given its broad common-sense meaning, such that a state law 'relate to' a benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan.' "

*Id.* at 739, 105 S.Ct. at 2389.

■ Here, it is undisputed that plaintiff's breach of contract action against defendants Maccabees and Benefit Trust "relates to" the employee benefit plan implemented by defendant Darling. Therefore, the court finds that plaintiff's state law claims in Counts IV and V of the complaint are preempted by 29 U.S.C. § 1144(a). Thus, plaintiff has failed to state, in Counts IV and V of her complaint, any claim upon which relief can be granted. Accordingly, plaintiff's claims against Maccabees and Benefit Trust, as set forth in Counts IV and V, must be dismissed under Fed.R. Civ.P. 12(b)(6).

## PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT AGAINST DEFENDANT MACCABEES

■ The next issue to be addressed is whether the court should allow plaintiff to amend her complaint so as to plead an ERISA claim against defendant Maccabees. Upon examining the provisions in the group life policy entered into between defendant Darling and defendant Maccabees, on August 1, 1988, the court finds plaintiff ineligible for benefits under the terms of Maccabees' policy. At page GP-2 of the policy, the following language is found:

### ELIGIBILITY REQUIREMENTS

An individual becomes eligible for coverage under this Policy at the time determined by the Waiting Period below, if he is a member of a class of persons shown on the Schedule of Benefits page, and meets all of the Requirements as to Good Health.

### WAITING PERIOD

Full-time Work Requirements—An individual becomes eligible

a. On the Effective Date of this Policy if he has completed at least ninety days of active full-time work with the Policyholder, otherwise upon the completion of ninety days if he was hired within ninety days prior to the effective date.

b. Upon completion of ninety days of active full-time work, if he begins work with the Policyholder after the Effective Date of this Policy.

*An individual not actively at work on a full-time basis on the date he would otherwise have become eligible will become eligible after he returns to active full-time work for five consecutive working days.*

(emphasis added).

At page GP-1 of the policy, the following language is provided:

ACTIVELY AT WORK ON A FULL-TIME BASIS—means actually working for the Policyholder at least thirty hours per week, performing all of the normal duties of the individual's job at the Policyholder's normal place of business or other location, other than his residence, where the policyholder's business requires him to be.

In the present action, Frederick Ollson was not actively at work on August 1,

1988. Moreover, Frederick Ollson never returned to active employment before his death on January 27, 1989. The plain language of Maccabees' policy required Ollson to be an active employee. Since he was not, Ollson was not entitled to coverage under the policy. Therefore, plaintiff could not prevail on an ERISA claim for benefits under this Policy.

█ In plaintiff's response brief, and at oral argument, plaintiff asserts an estoppel theory in order to maintain an action against defendant Maccabees. Plaintiff states that defendant Darling paid the premiums on the Maccabees' policy until Frederick Ollson's death. Plaintiff argues that Maccabees should now be estopped from denying coverage under the terms of the policy.[3]

In *Davis v. Kentucky Finance, supra* at 696, the Sixth Circuit discussed the maintenance of estoppel theories under ERISA. The court stated:

A number of courts faced with claims of estoppel in the context of an ERISA plan have given several grounds for rejecting the possibility that such a claim can be brought. In *Blau v. Delmonte Corp.*, 748 F.2d 1348, 1356–57 (9th Cir.1984) the 9th Circuit stated that ERISA preempts state common law theories of promissory estoppel, estoppel by conduct, fraud and deceit and contract actions. The same court stated in a later case that [a]n employee benefit fund created under a collective bargaining agreement cannot be required on the grounds of equitable estoppel to pay benefits to a person ineligible under the Plan's provisions. *Moore v. Provident Life and Accident Ins. Co.*, 786 F.2d 922, 928 (9th Cir.1986). *Accord, O'Grady v. Firestone Tire & Rubber Co.*, 635 F.Supp. 81, 83 (S.D.Ohio 1986).

Since state common law actions alleging estoppel are preempted by ERISA, and the plain language of the group life policy between defendants Darling and Maccabees' precludes coverage for Frederick Ollson, the court finds that plaintiff, even if she were allowed to amend her complaint to allege a claim against Maccabees on theories of either ERISA or estoppel, could not prevail on such claims. Therefore, plaintiff's motion for leave to amend her complaint against defendant Maccabees must be denied.

## PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT AGAINST DEFENDANT BENEFIT TRUST

The next issue to be addressed is whether the court should allow plaintiff to amend her complaint so as to plead an ERISA claim against defendant Benefit Trust. Upon examining the provisions in the group life policy entered into between defendant Darling and defendant Benefit Trust the court finds plaintiff ineligible for benefits under the terms of Benefit Trust's policy.

Count V of plaintiff's complaint alleges that defendant Benefit Trust breached its contract with Darling by failing to provide group life insurance or death benefit coverage to Frederick Ollson and his beneficiaries. According to plaintiff, the plan summary received by Frederick Ollson contained a "Life Benefit Section" that was relied upon by plaintiff, and plaintiff's decedent, in planning for their future. Plaintiff also argues that this plan summary contained a conversion provision that entitled her to convert the policy from a group life policy to an individual life policy. According to plaintiff, she was entitled to notice of the policy's termination. Plaintiff asserts that defendant Benefit Trust never notified her of the termination of the Benefit Trust policy, or her right to convert the policy from a group life policy to that of an individual life policy. Plaintiff contends that as a result of Benefit Trust's failure to notify her of the termination, she was left without any coverage.

Benefit Trust asserts that plaintiff was ineligible for continued group life coverage after August 1, 1988, because Frederick Ollson's disability began after the age of

---

**3.** The premiums paid by Darling on behalf of Frederick Ollson, were returned by defendant Maccabees. (Plaintiff's response brief at p. 4).

60, and Darling had ceased making premium payments on Ollson's behalf after that date.

The Summary Plan Description, which incorporates the insurance contract between Darling and Benefit Trust, provides, at pp. 25–27, as follows:

### LIFE BENEFIT SECTION

Benefit Trust Life will pay a benefit to your beneficiary in the event you die while covered under this Life Benefit. The amount of your coverage is shown in the Schedule of Benefits.

**A. DEFINITIONS.**

**Disability:** Your continuous inability, due to Sickness or Injury to do any work for which you will become qualified by reason of education, training or experience. Disability will not exist if you are working. *Disability must begin:*

(a) *before age 60;*

(b) before retirement; and

(c) while you are covered by the Life Benefit.

\*   \*   \*   \*   \*   \*

**C. CONVERSION PRIVILEGE.**

1. You may convert to an *individual life policy* if *you are covered under the Life Benefit* and; (a) your employment terminates; or (b) your waiver of premium or your continuation of coverage ends and you do not return to work for the Employer or Assured. Your new policy will be for an amount up to that provided for you under this Benefit at the time of the conversion. (Emphasis added).

\*   \*   \*   \*   \*   \*

4. You will be given notice of your right to convert at least 15 days before the end of the 31 day conversion period. If you are not given this notice on time, you will have 15 days *to convert after you are given notice*, but not past 60 days after the 31 day conversion period.

(emphasis added).

Plaintiff contends that Benefit Trust never notified plaintiff of the policy's termination, or of her conversion rights. Plaintiff submits that because Benefit Trust breached its notification provision, Benefit Trust is contractually liable to plaintiff.

Here, the court, after reviewing the plain language of the Life Benefit Section, finds that in order for plaintiff to be eligible for coverage, Frederick Ollson's disability had to begin before age 60. At the time of his stroke, however, Frederick Ollson was 61. Further, plaintiff's argument that she and/or plaintiff's decedent were not provided notice of the policy's termination so that they could timely convert to an individual life policy, is without merit. At paragraph 1 of the conversion privilege section it clearly provides that "you may convert to an individual life policy *if you are covered under this life benefit* ...". As discussed above, Frederick Ollson was not covered under the Life Benefit Section because he was 61 years of age at the time of his stroke.

Since the plain language of the group life policy between defendants Darling and Benefit Trust precludes coverage for Frederick Ollson, the court finds that plaintiff, *even if she were allowed to amend her complaint to allege a claim against Benefit Trust on an ERISA theory, could not prevail on such a claim.* Therefore, plaintiff's motion for leave to amend her complaint against defendant Benefit Trust must be denied.

### ORDER

IT IS HEREBY ORDERED that defendant *Maccabees'* motion for dismissal of Count IV of plaintiff's complaint is GRANTED, with prejudice, under Fed.R. Civ.P. 12(b)(6);

IT IS FURTHER ORDERED that defendant Benefit Trust's motion for dismissal of Count V of plaintiff's complaint is GRANTED, with prejudice, under Fed.R. Civ.P. 12(b)(6);

IT IS FURTHER ORDERED that plaintiff's motion to amend her complaint, as it relates to defendants Maccabees and Benefit Trust is DENIED.